UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 2:25-cr-27-1 |
| v. | ) |
| | ) JUDGE CORKER/WYRICK |
| KENNETH MICHAEL ALARID | ) |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Kenneth Michael Alarid, and the defendant's attorney, Marsha Arnurius, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment: Count One, Conspiracy to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A). The punishment for this offense is as follows:

   a) A minimum mandatory 10 years, up to life, imprisonment,

   b) A minimum of five years up to life on supervised release,

   c) A maximum fine of $10,000,000 and

   d) A $100 mandatory assessment fee.

2. There are no remaining counts in the indictment as to this defendant.

3. The defendant has read the indictment, discussed the charge and possible defenses with defense counsel, and understands the crime charged. Specifically, the elements of the offense are as follows:

   a) Two or more persons conspired, or agreed, to distribute methamphetamine;

   b) The defendant knowingly and voluntarily joined the conspiracy;

   c) The defendant participated in the conspiracy; and

d) The conspiracy involved 50 grams or more of methamphetamine.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

    a) On March 14, 2024, a suspicious parcel (Parcel #1) was located at a FedEx hub in Indianapolis, IN. A canine trained to alert to the presence of narcotics conducted a free-air sniff inside the FedEx security storage room and demonstrated a distinct change of behavior, aggressive stare, and concentrated breathing alert to the presence of a narcotic odor emitting from Parcel #1. Consistent with FedEx policy and procedures, Parcel #1 was opened and found to contain 1,818.5 grams of methamphetamine. In addition to quantity, the U.S. Drug Enforcement Administration (DEA) conducted a purity analysis and found that the methamphetamine was 100% (+/- 7%) pure. According to the affixed label on Parcel #1, it was shipped first overnight on Wednesday March 13, 2024, and was scheduled to be delivered by 10:00 a.m. on March 14, 2024. The parcel was addressed to a recipient in Piney Flats, TN. Agents determined that there was no one with the recipient's name who resided at the address on the label affixed to Parcel #1. Co-defendant Kelly Riley was, however, an occupant of the address identified on the label. The shipper information on the meth parcel was listed as an address in Marina Del Rey, CA.

2

b) On March 15, 2024, the U.S. Department of Homeland Security Investigations (HSI), with agents of the Second Judicial Drug Task Force conducted a controlled delivery of Parcel #1 pursuant to a state-court-issued, anticipatory search warrant. Parcel #1 was delivered by an undercover investigator. Co-defendant Kelly Riley met the undercover investigator at the top driveway of the residence and took possession of the package. Co-defendant Riley then walked behind the residence to the bottom driveway and took Parcel #1 into the basement. Law enforcement then executed the search warrant and co-defendant Riley was taken into custody.

c) During a search of the basement of the residence, which was determined to be co-defendant Riley's bedroom and living quarters, the agents recovered Parcel #1, unopened. Co-defendant Riley's cell phone was seized.

d) In a post-arrest interview, co-defendant Riley was provided with his *Miranda* warnings, and he waived them. Co-defendant Riley denied any involvement in trafficking or using methamphetamine and stated that he was unaware of anyone who might have shipped Parcel #1 to him. He stated that he believed Parcel #1 would contain pegboard parts that he had recently ordered from Amazon. He maintained his innocence despite the package not being shipped by Amazon and the weight of the package being nearly 10 pounds.

e) After co-defendant Riley was arrested, a second suspicious parcel was identified (Parcel #2). Parcel #2 was shipped from California on March 14, 2024, via United States Postal Service (USPS) – not FedEx. Parcel #2 was also addressed to co-defendant Riley's residence and shared similarities with

3

the shipper identified on Parcel #1. For instance, the last name of the purported shipper on Parcel #2 was the same as on Parcel #1, the handwriting on both Parcel #1 and Parcel #2 appeared to be the same, and both parcels were mailed from Marina Del Rey, CA. On March 18, 2024, co-defendant Riley's mother, who also resides at the address, abandoned Parcel #2 to law enforcement and provided law enforcement with consent to search the parcel. Parcel #2 contained 1,354.5 grams of methamphetamine that a DEA laboratory analysis confirmed was 100% (+/-7%) pure methamphetamine.

f) Agents sought and obtained a search warrant to conduct a search of co-defendant Riley's cell phone. During the search they located messages sent on March 14, 2024, between co-defendant Riley and contact of a known methamphetamine trafficker. The two discuss whether co-defendant Riley has received the "hose clamp" and the cut-off time for the delivery. In addition to the communications, co-defendant Riley's internet history indicated that he was using the USPS website to track Parcel #2.

g) Law enforcement was able to determine that the defendant, a residence of Los Angeles, CA, was also tracking Parcel #2. A Special Agent with the Tennessee Bureau of Investigation, who also serves as a Task Force Officer

4

(TFO) with the USPS Inspection Service (USPSIS) obtained a surveillance photo of the individual who mailed Parcel #2 at the U.S. Post Office.



The USPIS TFO was able to determine that the security photo at the U.S. Post Office was similar to the image on the defendant's driver's license photo.

h) Law enforcement was able to determine that records obtained from FedEx related to Parcel #1 show that an individual using a phone number associated with the defendant made and received multiple calls related to the delivery status of Parcel #1. During the calls, the caller identifies himself with the name of the shipper identified on Parcel #1.

i) The defendant agrees and stipulates that he conspired with co-defendant Kelly Riley and others to ship Parcel #1 and Parcel #2 to the Eastern District of Tennessee and knew that both parcels he shipped to the Eastern District of Tennessee contained 50 grams or more of actual methamphetamine.

5. The defendant is pleading guilty because the defendant is in fact guilty.

5

The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

- a) the right to plead not guilty;
- b) the right to a speedy and public trial by jury;
- c) the right to assistance of counsel at trial;
- d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;
- e) the right to confront and cross-examine witnesses against the defendant;
- f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and
- g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

- a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);
- b) The Court will impose special assessment fees as required by law; and
- c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the

6

Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Pursuant to Rule 11(c)(1)(C), the defendant and the United States agree that a particular provision of the Sentencing Guidelines, policy statement, or sentencing factor, namely U.S.S.G. § 2D1.1(a)(5) & (c)(2) - that the defendant is responsible for at least 1.5 kilograms, but less than 4.5 kilograms of actual methamphetamine, shall apply to the defendant's sentence. In the event the Court declines to accept this agreement, either party will be free to withdraw from the plea agreement.

8. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

9. The defendant agrees to pay the special assessment in this case prior to sentencing.

10. Financial Obligations. The defendant agrees to pay all fines and/or restitution to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11. The defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without

9

limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. (Indeed, because the defendant is pleading guilty to a narcotics violation of law, removal is presumptively mandatory.) Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of the defendant's conviction on immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences the plea may entail, even if the consequence is automatic removal from the United States.

13. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial

or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

14. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

15. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

June 2, 2025
Date

By: _____
B. Todd Martin
Assistant United States Attorney

May 29th 2025
Date

_____
Kenneth Michael Alarid
Defendant

5-29-25
Date

_____
Marsha Arnurius
Attorney for the Defendant

11